Filed 5/8/13  P. v. Casarez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038478 |
| Plaintiff and Respondent, | (San Benito County Super. Ct. Nos. CR-11-01168, CR-12-00027) |
| v. | |
| PAUL STEVE CASAREZ, | |
| Defendant and Appellant. | |

Following pleas of no contest, defendant Paul Steve Casarez was sentenced at the same time in multiple cases.  On appeal, defendant challenges the upper term imposed on his conviction of possession of a controlled substance following revocation of deferred entry of judgment (DEJ) in Case No. CR-11-01168.  He also disputes the court's calculation of presentence credit in Case Nos. CR-11-01168 and CR-12-00027.[1]

---

[1]     Penal Code section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court."  Defendant does not suggest that he has complied with this statutory requirement but he argues that we may reach the issue of presentence custody credit because it is not the only issue on appeal. The People correctly agree.  (See *People v. Acosta* (1996) 48 Cal.App.4th 411, 420-428.)

1

We conclude that the trial court did not err in imposing the upper term in Case No. CR-11-01168.  We agree, however, that defendant is entitled to additional presentence credit.  Accordingly, we modify the judgment and affirm the judgment as modified.

I

*Procedural History*

Defendant was arrested on May 18, 2011 for possession of cocaine.  He was in San Benito County jail from May 18, 2011 to May 19, 2011.

On July 22, 2011, a complaint (Case No. CR-11-01168) was filed in San Benito County Superior Court charging defendant with possessing a controlled substance (cocaine) on or about May 18, 2011 in violation of Health and Safety Code section 11350, subdivision (a).

On August 16, 2011, defendant appeared for arraignment.  He was referred to the probation department to be evaluated for the Deferred Entry of Judgment Program (DEJP).  In September 7, 2011, the Probation Officer's Report indicated that defendant was eligible for the program and it recommended that defendant be admitted to the program.[2]  Defendant promised to appear for the next hearing date on September 15, 2011.

Defendant did not appear on September 15, 2011.  The minute order indicates bail was set at $15,000.  A felony bench warrant was issued, reflecting that bail was fixed at $15,000.  The warrant required a mandatory appearance and admission to bail.[3]

---

[2]     "Pursuant to [Penal Code] section 1000, a defendant who has been charged with specified drug offenses and has not committed a crime of violence or threatened violence may undergo a drug education and treatment program in lieu of undergoing a criminal prosecution, and upon satisfactory completion may obtain dismissal of the criminal charges.  [Citation.]"  (*People v. Canty* (2004) 32 Cal.4th 1266, 1285.)

[3]     San Benito County's Bail Schedule, effective July 1, 2011, indicates the following jail policy regarding release on an inmate's own recognizance:  "No inmate shall be released OR when the warrant states 'NO OR, Body Only, not to be released without

2

Defendant was in county jail on December 13, 2011. The same day, a hearing was held on the warrant return. At the hearing, the trial court set the next hearing date and released defendant on his own recognizance (O.R.) in that case.

On December 16, 2011, defendant pleaded guilty to the possession charge. The court issued an order granting DEJ pursuant to Penal Code section 1000 et seq.[4] He was admitted to the DEJP.

On January 7, 2012, defendant was arrested for offenses committed the previous day. He apparently remained in county jail from that date forward through the date of sentencing.

On January 10, 2012, a complaint (Case No. CR-12-00027) was filed in San Benito County Superior Court charging defendant with committing the following offenses on or about January 6, 2012: assault with a deadly weapon in violation of section 245, subdivision (a)(1) (count one), attempted second degree robbery in violation of section 211 (count two), possession of a firearm in violation of section 29800, subdivision (a)(1) (count three), carrying a loaded firearm in violation of section 25850, subdivision (c)(1) (count four), and possession of a firearm in a public place in violation of section 25300, subdivision (a) (count five). Defendant entered a not guilty plea. Bail was set at $45,000.

posting bail' or similar language."
(<http://www.sanbenito.courts.ca.gov/FINAL%20Bail%20Schedule.pdf> [as of Jan. 29, 2012].) We take judicial notice of this policy (Evid. Code, §§ 452, subd. (c) ["Official acts of the . . . executive . . . departments . . . of any state of the United States"], 459, subd. (a) [judicial notice by reviewing court]; see Cal. Const., art. XI, § 1, subd. (a) [counties are legal subdivisions of the State]; Gov. Code, § 23002 [same]), see also *Marek v. Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1076, fn. 5 [county agency constituted state entity for purposes of judicial notice].)

[4] All further statutory references are to the Penal Code unless otherwise stated.

A notice, filed by the San Benito County Probation Department on January 13, 2012, directed defendant to appear on January 18, 2012 and show cause why the DEJ order in Case No. CR-11-01168 should not be revoked. Defendant's alleged violation of the DEJP was his failure to obey all laws.

The January 18, 2012 minute order in Case No. CR-11-01168 reflects that the court summarily revoked DEJ and continued the matter until January 26, 2012 for a hearing on the alleged violation of the DEJP.[5] The box for bail was checked and "body only" was written in the space for the amount of bail. That minute order also indicated that defendant was released on O.R. in Case No. CR-12-00027.

The January 24, 2012 minute order in Case Number CR-12-00027 indicated defendant was released on O.R. but he continued "in custody on other charges." The next hearing was set for January 26, 2012.

On January 26, 2012, in Case Number CR-11-01168, the court rescheduled the hearing on the alleged violation of the DEJP for February 16, 2012. Again, the box for bail was checked and "body only" was written in space for the amount of bail.

---

[5]     Section 1000.3 provides in pertinent part: "If it appears to the prosecuting attorney, the court, or the probation department that the defendant is performing unsatisfactorily in the assigned program . . . , or the defendant is convicted of a felony, or the defendant has engaged in criminal conduct rendering him or her unsuitable for deferred entry of judgment, the prosecuting attorney, the court on its own, or the probation department may make a motion for entry of judgment. [¶] After notice to the defendant, the court shall hold a hearing to determine whether judgment should be entered. [¶] If the court finds that the defendant is not performing satisfactorily in the assigned program . . . , or the court finds that the defendant has been convicted of a crime as indicated above, or that the defendant has engaged in criminal conduct rendering him or her unsuitable for deferred entry of judgment, the court shall render a finding of guilt to the charge or charges pled, enter judgment, and schedule a sentencing hearing as otherwise provided in this code."

4

The January 26, 2012 minute order in Case Number CR-12-00027 reflected that defendant was released on O.R. in that case but he continued "in custody on other charges." The next hearing was set for February 16, 2012.

On February 16, 2012, the next hearing was scheduled for February 23, 2012 and the hearing on the alleged violation of the DEJP in Case Number CR-11-01168 was reset for March 2, 2012. On February 23, 2012, the hearing on March 2, 2012 was confirmed. On March 2, 2012, the next hearing was scheduled for March 15, 2012 and the hearing on the alleged violation of the DEJP was reset for March 23, 2012. On each minute order, the box for bail was checked and "body only" was written in the space for the amount of bail.

Meanwhile in Case No CR-12-00027, the preliminary examination initially was first scheduled to be held on March 2, 2012 but eventually it was rescheduled to March 23, 2012. Minute orders for February 16, 2012, February 23, 2012, and March 2, 2012 indicated that defendant was released on O.R. in that case and "in custody on other charges."

On March 15, 2012, an amended complaint was filed in Case Number CR-12-00027. Defendant appeared and entered a not guilty plea. The minute order again indicated that defendant was released on O.R. in that case and "in custody on other charges."

Also on March 15, 2012, the hearing on the alleged violation of the DEJP was confirmed for March 23, 2012 in Case No. CR-11-01168. The box for bail was checked and "body only" was written in the space for the amount of bail on the minute order.

On March 23, 2012, another amended complaint was filed in Case No. CR-12-00027. It charged defendant with committing seven offenses on or about January 6, 2012: attempted carjacking (§§ 215, subd. (a), 664) (count one); attempted second degree robbery (§ 211) (count two); active participation in a criminal street gang (§ 186.22,

5

subd. (a)) (count three); exhibiting a firearm (§ 417, subd. (a)(2)(A)) (count four); felon in possession of a firearm (§ 29800) (count five); felon carrying a loaded firearm (§ 25850, subd. (c)(1)) (count six); possession of a firearm in a public place (§ 25300, subd. (a)) (count seven). With respect to counts one (attempted carjacking) and two (attempted second degree robbery), the amended complaint alleged a gang enhancement (§ 186.22, subd. (b)(1)(C)), an enhancement for carrying a firearm in the commission of a street gang crime (§ 12021.5, subd. (a)), and an enhancement for personal use of a firearm (§ 12022.5, subd. (a)). With respect to count three (active participation in a criminal street gang), it alleged enhancements for carrying a firearm in the commission of a street gang crime (§ 12021.5, subd. (a)) and personal use of a firearm (§ 12022.5, subd. (a)). With respect to count four (exhibiting a firearm), it alleged a gang enhancement (§ 186.22, subd. (d)) and an enhancement for carrying a firearm in the commission of a street gang crime (§ 12021.5, subd. (a)). With respect to counts five (felon in possession of a firearm), six (felon carrying a loaded firearm in a public place), and seven (possession of a firearm in a public place), the amended complaint alleged a gang enhancement pursuant to section 186.22, subdivision (b)(1)(A).

The March 23, 2012 minute order in Case No. CR-12-00027 shows that defendant waived a preliminary examination, the second amended complaint was deemed an information, and defendant waived time and entered not guilty pleas. It indicated that defendant was released on O.R. in that case but he was "in custody on other charges." Trial setting was scheduled for April 19, 2012.

Also on March 23, 2012 in Case No. CR-11-01168, the hearing on the alleged violation of the DEJP was reset for April 19, 2012. On April 19, 2012, the hearing regarding the alleged violation of the DEJP was reset for May 3, 2012. On each minute order, the box for bail was checked and "body only" was written in the space for the amount of bail.

6

On April 19, 2012, trial setting in in Case No. CR-12-00027 was rescheduled for May 3, 2012. The minute order indicated that defendant was released on O.R. in that case but he was "in custody on other charges."

Finally on May 3, 2012, in Case No. CR-12-00027, defendant pleaded no contest to felony attempted carjacking (§§ 215, 664) (count one) and admitted the enhancement allegation that he had carried a firearm in connection with a street-gang crime (§ 12021.5, subd. (a)) and he pleaded no contest to misdemeanor active participation in a criminal street gang (§ 186.22, subd. (a) [count three reduced from felony]). The other special allegations concerning counts one and three were stricken and the remaining charges were dismissed. In a third case, Case No. CR-12-00103, defendant pleaded no contest to misdemeanor false personation (§ 529), a crime originally charged as a felony.[6] Defendant admitted violating DEJP's conditions in Case Number CR-11-01168 based on the crimes to which he pleaded in Case Nos. CR-12-00027 and CR-12-00103.

Also on May 3, 2012, the court scheduled the three matters for sentencing on June 7, 2012. Defendant was referred to the probation department for presentencing reports. The record indicates that defendant was released on O.R. in Case Nos. CR-12-00027 and CR-12-00103 but he remained "in custody on other charges." The record reflects a "body-only hold" continued in Case No. CR-11-01168.

According to the probation reports, the drug offense, to which defendant pleaded in Case No. CR-11-01168, came to light when an officer approached two males that he believed might be burglarizing a parked truck on May 18, 2011. A plastic baggie containing .54 grams of a white substance, which latter tested positive for cocaine, was found in the gutter and defendant admitted the "coke" was his. The later crimes to which defendant pleaded in Case No. CR-12-00027 occurred during what appeared to be an

---

[6]     This court has no further information about Case No. CR-12-00103.

attempted robbery at a 7-Eleven store on January 6, 2012. One of the suspects, who was described as wearing a red bandana on his face and carrying a pistol and later identified as defendant by a female victim, demanded car keys from a male victim outside the store.

The probation report for Case No. CR-12-00027 (attempted carjacking, etc.) indicated defendant had been in county jail from January 10, 2012 (date of arraignment on original complaint) through and including January 18, 2012 (release on O.R. in that case) for a total of nine actual days served. It indicated that defendant was entitled to eight days of conduct credit under section 4019.

The probation report for Case No. CR-11-01168 (possession of controlled substance) reported defendant had been in county jail on May 18, 2011 (date of arrest) and May 19, 2011, December 13, 2011 (warrant return), from January 7, 2012 (date of arrest on new charges) through and including January 9, 2012 (day before arraignment on new charges in Case No. CR-12-00027), and from January 19, 2012 (day after summary revocation of DEJ) through and including June 7, 2012 (the date of sentencing) for a total of 147 days. It indicated that defendant was entitled to only 22 days of conduct credit, 15 percent of the actual days served based on section 2933.1.

Defendant remained in custody until he was sentenced on June 7, 2012.

On June 7, 2012, the court sentenced defendant as follows. In Case No. CR-12-00027, the court imposed an upper prison term of four and a half years on count one plus a two-year prison enhancement pursuant to section 12021.5, for a total prison term of six and a half years. The court also imposed a concurrent one-year jail term on count three in that case. In Case No. CR-11-01168, the court imposed an upper three-year prison term to be served concurrently with the sentence imposed in Case No. CR-12-00027. At the sentencing hearing, defense counsel argued that the circumstances at the time of defendant's plea did not justify imposition of the upper term. In Case No. CR-12-00103,

8

the court sentenced defendant to a one-year jail term for misdemeanor false personation to be served concurrently with the state prison sentences imposed in the other two cases.

In Case No. CR-12-00027 (attempted carjacking, etc.), the court awarded credit for nine actual days and eight days conduct credit (§ 4019) for a total of 17 days credit for time served as recommended by the probation report. In Case Number CR-11-01168 (possession of a controlled substance), the court awarded credit for 147 actual days and 29 days conduct credit for a total of 176 days credit for time served. It indicated that it was applying a 20 percent limitation on conduct credit.

Defendant was remanded to the custody of the sheriff for delivery to the Department of Corrections and Rehabilitation.

## II

### *Discussion*

A. *Upper Term in Case Number CR-11-01168*

The sentencing court explained that it was imposing the upper term on defendant's conviction of possession of a controlled substance in Case Number CR-11-01168 "based upon his total behavior, which indicates that he's a serious danger to society." (See California Rules of Court, rule 4.421(b)(1)[7] [circumstances in aggravation include: "The defendant has engaged in violent conduct that indicates a serious danger to society"].)

Defendant asserts that the trial court was not permitted to consider his behavior following his guilty plea and therefore the court had no valid basis for sentencing him to the upper term. In making this argument, he analogizes DEJ to probation and relies on rule 4.435(b)(1) and *People v. Colley* (1980) 113 Cal.App.3d 870. Respondent agrees with defendant's analysis. This court, however, is not persuaded.

---

[7] All further references to rules are to the California Rules of Court.

Subdivision (b) of rule 4.435, which concerns sentencing on revocation of probation, provides in pertinent part: "On revocation and termination of probation under section 1203.2, when the sentencing judge determines that the defendant will be committed to prison: [¶] (1) If the imposition of sentence was previously suspended, the judge must impose judgment and sentence after considering any findings previously made and hearing and determining the matters enumerated in rule 4.433(c). [¶] *The length of the sentence must be based on circumstances existing at the time probation was granted, and subsequent events may not be considered in selecting the base term* or in deciding whether to strike the additional punishment for enhancements charged and found." (Italics added.)

The Advisory Committee Comment following the rule states: "The restriction of subdivision (b)(1) [of Rule 4.435] is based on *In re Rodriguez* (1975) 14 Cal.3d 639, 652: '[T]he primary term must reflect the circumstances existing at the time of the offense.' " (Advisory Com. com., 23, Pt. 1B West's Ann. Code, Court Rules (2006 ed.) foll. Rule 4.435, p. 318.) As will be discussed, the *In re Rodriguez* decision addressed issues that arose in the context of indeterminate, rather than determinate, sentencing.

In *People v. Colley*, *supra*, 113 Cal.App.3d 870, a determinate sentencing case now cited by defendant, defendant Colley was convicted by plea of first degree burglary and the trial court granted probation. (*Id*. at p. 871.) In January 1978, the trial court found the defendant had violated probation and sentenced him to the middle prison term. (*Ibid*.) The trial court then recalled the sentence pursuant to former section 1170, subdivision (d), and again granted probation. (*Id*. at pp. 871–872.) After defendant Colley was subsequently convicted of petty theft, the trial court again revoked probation but this time sentenced the defendant to the upper term. (*Id*. at p. 872.)

The appellate court in *Colley* concluded that imposition of the upper term following the second revocation of probation violated former rule 435(b)(1) (now rule

10

4.435(b)(1)) and *In re Rodriguez, supra*, 14 Cal.3d 639 because it was based upon the defendant's poor performance on probation. (*Colley, supra*, 113 Cal.App.3d at p. 873.) It indicated that the selection of the appropriate term was required to be "predicated upon appellant's record *prior to the original grant of probation*" and concluded that the trial court's choice of the upper term was impliedly not based on that record. (*Id.* at p. 874.) The appellate court reduced the sentence to the middle term and affirmed the judgment as modified. (*Ibid.*)

Defendant has not convinced us that rule 4.435 must or should be followed in sentencing on revocation of DEJ for a number of reasons. First, by its terms, rule 4.435 applies to only sentencing on revocation of probation, not DEJ. Second, *People v. Colley, supra*, 113 Cal.App.3d 870 involved the recall of a sentence and it has been criticized on other grounds. Former section 1170, subdivision (d), which was in effect in *Colley,* required, as does the current version, that the new sentence, if any, upon recall be no greater than the initial sentence. (Stats. 1977, ch. 165, § 15, pp. 648-649.) That initial sentence in *Colley* was the middle term. (*People v. Colley, supra*, 113 Cal.App.3d 871.)

In *People v. Harris* (1990) 226 Cal.App.3d 141 (review den. Mar. 13, 1991), the First District Court of Appeal agreed that in *In re Rodriguez*, "the inspiration for [former] rule 435(b)(1), may have been partly undercut by recent Supreme Court precedent, at least in a determinate-sentence context." (*Id.* at p. 146.) It held that "when a court reinstates probation under the circumstances present here, a later sentence upon revocation of the reinstated probation may take into account events occurring between the original grant and the reinstatement. [¶] To hold otherwise would seriously impede a court's flexibility to deal effectively with the offender who, granted the 'clemency and grace' of probation in the hopes of achieving rehabilitation (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445), proves unable to abide by the conditions of that liberty the first time

11

out.  Allowing an offender to fail multiple grants of probation with absolute impunity under [former] rule 435(b)(1) would discourage a court from ever reinstating probation." (*Id*. at p. 147.)

Third, the statement in *In re Rodriguez* from which the limitation of rule 4.435(b)(1) was derived had nothing to do with selecting a determinate term of punishment but rather arose in the context of indeterminate sentencing.  "Before July 1, 1977, California law provided for indeterminate sentencing.  Under that sentencing scheme, penal statutes specified a minimum and a maximum sentence for felonies, often ranging broadly from as little as one year in prison to imprisonment for life.  [Citation.] A trial court would simply sentence a defendant to prison for 'the term prescribed by law,' while the actual length of a defendant's term, within the statutory maximum and minimum, was determined by the Adult Authority.  [Citations.]"  (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.)

In *In re Rodriguez*, *supra*, 14 Cal.3d 639, a habeas petitioner, who had served 22 years of an indeterminate sentence of one year to life for violation of former Penal Code section 288, argued that "the statutory life maximum term" was unconstitutionally "disproportionate to the offense" and the Adult Authority had abused its discretion "in failing to fix a lesser term than the statutory life maximum term . . . ."  (*Id*. at pp. 642-643.)  The Supreme Court concluded that the penalty provision of former section 288 was constitutional but the Adult Authority had "failed to properly interpret and administer the Indeterminate Sentence Law" and petitioner was "entitled to be discharged from his term."  (*Id*. at p. 643.)

With regard to the responsibility of the Adult Authority to fix the term of the offense, the Supreme Court stated:  "This basic term-fixing responsibility of the Authority is independent of the Authority's power to grant parole and of its discretionary

12

power to later reduce the term thus fixed, which fixed, constitutionally proportionate, term we shall hereafter refer to as the 'primary term.' The Authority's power to grant parole and to later reduce the primary term remain unaffected. That power enables the Authority to give recognition to a prisoner's good conduct in prison, his efforts toward rehabilitation, and his readiness to lead a crime-free life in society. On the other hand, this discretionary power also permits the Authority to retain a prisoner for the full primary term if his release might pose a danger to society [citation] and to revoke parole, rescind an unexecuted grant of parole and refix a reduced term at a greater number of years up to the primary term if the prisoner or parolee engages in conduct which affords cause to believe he cannot or will not conform to the conditions of parole, or would pose a danger to society if free. [Citations.] These considerations, however, are based in large measure on occurrences subsequent to the commission of the offense. [¶] Conversely, the primary term must reflect the circumstances existing at the time of the offense. Both the Eighth Amendment and article I, section 17, proscribe punishment which is disproportionate to the particular offense." (*Id*. at p. 652.) The Supreme Court held that "[b]ecause [the Adult Authority] has not distinguished its responsibility to fix the primary term of prisoners subject to the Indeterminate Sentence Law from its parole-granting function, and because it has determined that petitioner is not ready for parole, it has either failed to fulfill its obligation to fix petitioner's term at a number of years proportionate to his offense, or, having impliedly fixed it at life [citation], has imposed excessive punishment on him." (*Id*. at p. 653, fn. omitted.)

The California Supreme Court's statements in *In re Rodriguez* (1975) 14 Cal.3d 639 must be understood in the context in which they were made. " 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.' (*Chevron*

13

*U.S.A., Inc. v. Workers' Comp. Appeals* Bd. (1999) 19 Cal.4th 1182, 1195 . . . .)"
(*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680.)

Our fourth reason for rejecting defendant's contentions is based on determinate sentencing law and rules, which contemplate that appropriate term of imprisonment will be selected based on the "circumstances in aggravation or mitigation, and *any other factor reasonably related to the sentencing decision*." (Rule 4.420(b), italics added; see § 1170, subds. (a)(3) ["In sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council"], (b) ["The court shall select the term which, in the court's discretion, best serves the interests of justice"].) Rule 4.421 makes clear that the "[c]ircumstances in aggravation include factors relating to the crime" as well as "factors relating to the defendant." (Rule 4.421.) The factors relating to the defendant include the circumstance that the "defendant has engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(b)(1).)

The Advisory Committee Comment following rule 4.421 also cites *In re Rodriguez, supra*, 14 Cal.3d 639 and states: "Refusal to consider the personal characteristics of the defendant in imposing sentence would also raise serious constitutional questions. The California Supreme Court has held that sentencing decisions must take into account 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.' *In re Rodriguez* (1975) 14 Cal.3d 639, 654, quoting *In re Lynch* (1972) 8 Cal.3d 410, 425. In *In re Rodriguez* the court released petitioner from further incarceration because '[I]t appears that neither the circumstances of his offense *nor his personal characteristics* establish a danger to society sufficient to justify such a prolonged period of imprisonment.' (*Id*. at 655.) (Footnote omitted, emphasis added.) 'For the determination of sentences, justice generally requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' [¶] (*Pennsylvania v. Ashe* (1937) 302 U.S.

14

51, 55, quoted with approval in *Gregg v. Georgia* (1976) 428 U.S. 153, 189.)"[8] (Advisory Com. com., 23, Pt. 1B West's Ann. Code, Court Rules (2006 ed.) foll. rule 4.421, pp. 266-267.)

In *People v. Gonzales* (1989) 208 Cal.App.3d 1170, the appellate court held that the "defendant's conduct subsequent to the charged offense was properly considered as a factor in aggravation." (*Id.* at p. 1173, review den. May 31, 1989.) The defendant had been convicted of voluntary manslaughter for shooting a neighbor. (*Id.* at p. 1171.) The appellate court concluded the trial court had properly imposed the upper term based upon the defendant's subsequent conviction for firing three shots from a revolver at a gas station attendant. (*Id.* at pp. 1172-1173.) The court observed: "Some appellate courts

---

[8] We observe that the Ninth Circuit has concluded that section 4A1.3 of the Federal Sentencing Guidelines, which *U.S. v. Booker* (2005) 543 U.S. 220, 245 [125 S.Ct. 738] rendered advisory, "authorizes a court to take into consideration a defendant's post-offense, pre-sentence conduct as a possible ground for departing upward in imposing sentence. See, e.g., *United States v. Yates*, 22 F.3d 981, 987 (10th Cir.1994) ('[s]ubsequent criminal conduct involving the commission of similar offenses before sentencing also is a permissible basis for departing upwards in the criminal history category') (citation omitted); *United States v. Fahm*, 13 F.3d 447, 450 n. 3, 451 (1st Cir.1994) (offense committed while awaiting sentencing on federal charge and trial on related state charges) (citations omitted); *United States v. Keats*, 937 F.2d 58, 66-67 (2d Cir.) ('[a]n upward departure in the criminal history category can be based on post-arrest conduct') (citations omitted), cert. denied, 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. Fayette*, 895 F.2d 1375, 1380 (11th Cir.1990) ('departure may be justified when, as a consequence of post-plea criminal conduct, the otherwise applicable guidelines sentencing range significantly under-represents the . . . defendant's . . . likely recidivism'); *United States v. Sanchez*, 893 F.2d 679, 681-82 (5th Cir.1990) (offense committed while on bond and awaiting trial on related charges); *United States v. Jordan*, 890 F.2d 968, 976-77 (7th Cir.1989) (post-offense, pre-sentence drug dealing in a drug trafficking case)." (*U.S. v. Myers* (9th Cir. 1994) 41 F.3d 531, 533-534.) On the other hand, "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." (*Pepper v. U.S.* (2011) ___ U.S. ___, ___ [131 S.Ct. 1229, 1236].)

15

have described *Rodriguez*'s no-subsequent-conduct rule as remaining applicable under determinate sentencing law, although none have applied it to the initial choice of a base term. [Citations.] The California Supreme Court, however, does not appear to interpret *Rodriguez* as prohibiting the use of defendant's conduct between commission of the offense and the time of sentencing to justify a more severe sentence." (*Id*. at p. 1173.)

We conclude that defendant's reliance on rule 4.435(b)(1) is misplaced. While probation and DEJ dispositions have many similarities, there are also differences. (See *People v. Mazurette* (2001) 24 Cal.4th 789, 796.) We decline to extend to rule 4.435's restriction on sentencing on revocation of probation to sentencing on the revocation of DEJ based upon defendant's limited argument that these dispositions are similar.

B. *Custody Credits*

1. *Basic Law*

"Persons who remain in custody prior to sentencing receive credit against their prison terms for all of those days spent in custody prior to sentencing, so long as the presentence custody is attributable to the conduct that led to the conviction. (§ 2900.5.) This form of credit ordinarily is referred to as credit for time served. [¶] Additional credit may be earned, based upon the defendant's work and good conduct during presentence incarceration. (§§ 2900.5, subd. (a), 4019.) Such presentence credit is referred to as conduct credit. (See *People v. Cooper* (2002) 27 Cal.4th 38, 40.)" (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

Section 2900.5, subdivision (a), states in pertinent part and effectively stated at all pertinent times: "In all felony and misdemeanor convictions . . . , when the defendant has been in custody , including, but not limited to, any time spent in a jail . . . , all days of custody of the defendant , including days . . . credited to the period of confinement pursuant to Section 4019 . . . , shall be credited upon his or her term of imprisonment . . . ." (Stats. 2011, ch. 15, § 466, p. 480, eff. April 4, 2011, operative Oct. 1, 2011, see

16

Stats.1998, ch. 338, § 6, pp. 2718-2719, eff. Aug. 21, 1998, operative Jan. 1, 1999; see also Stats. 2011, ch. 15, § 636, p. 622; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011.)  A partial day spent in county jail is counted as a day of custody for which a defendant is entitled to credit.  (*People v. King* (1992) 3 Cal.App.4th 882, 886; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.)

Section 2900.5, subdivision (b), provides and at all relevant times provided: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted.  Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."  (Stats. 2011, ch. 15, § 466, pp. 480-481, eff. April 4, 2011, operative Oct. 1, 2011; Stats.1998, ch. 338, § 6, pp. 2718-2719, eff. Aug. 21, 1998, operative Jan. 1, 1999; see Stats. 2011, ch. 15, § 636, p. 622; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011.)

Effective September 28, 2010, the Legislature amended section 4019 and section 2933.  (Stats. 2010, ch. 426, §§ 1, 2, pp. 2087-2088.)  That amendment of section 2933 allowed certain defendants who were sentenced to state prison and for whom the sentence was executed to earn presentence conduct credit at the rate of one day for every day of actual custody "[n]otwithstanding Section 4019."  (Stats. 2010, ch. 426, § 1, p. 2087, eff. Sept. 28, 2010 [former § 2933, subd. (e)].)  This was the law in effect during May 2011, when defendant committed the crime of which he was convicted in Case No. CR-11-01168 and when he was first confined in county jail on that offense.

The current version of section 4019 went into effect on September 21, 2011 and became operative October 1, 2011.  (Stats. 2011-2012, 1st Ex. Sess., ch. 12, §§ 35, 47, pp. 5976-5977, 5981.)  Section 4019 presently allows a term of four days to be deemed served for every two days spent in actual presentence custody based on a defendant's

17

conduct.[9]  (§ 4019, subds. (b), (c), & (f).)  It applies, however, only to crimes committed on or after October 1, 2011.  (§ 4019, subd. (h).)  It states:  "Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."  (*Ibid.*)

The various permutations of section 4019 since its amendment effective September 28, 2010 have not applied to defendant's possession of a controlled substance offense committed in May 2011.[10]  Section 2933 has been amended to no longer provide for presentence conduct credit.  (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 16, p. 5963, eff. Sept. 21, 2011 and operative Oct. 1, 2011.)

---

[9]    Subdivision (b) of section 4019 generally provides that "for each four-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned . . . ." Subdivision (c) of section 4019 generally provides: "For each four-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations . . . ." Subdivision (f) of section 4019 makes plain that subdivisions (b) and (c) must be read together: "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."

[10]    Effective April 4, 2011, section 4019 as amended applied to prisoners confined to jail for a crime committed on or after July 1, 2011.  (Stats. 2011, ch. 15, § 482, p. 498, operative Oct. 1, 2011.)  Effective June 30, 2011, section 4019 as amended applied to prisoners confined to jail for a crime committed on or after October 1, 2011.  (Stats. 2011, ch. 39, § 53, p. 1731, operative Oct. 1, 2011.)  Effective Sept. 21, 2011, section 4019 as amended applied to prisoners confined to jail for a crime committed on or after October 1, 2011.  (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, p. 5977, operative Oct. 1, 2011.)  Each version stated that "[a]ny days earned by a prisoner" confined for crimes committed prior to the specified date "shall be calculated at the rate required by the prior law."  (Stats. 2011, ch. 15, § 482, p. 498, operative Oct. 1, 2011; Stats. 2011, ch. 39, § 53, p. 1731, operative Oct. 1, 2011; Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, p. 5977, operative Oct. 1, 2011.)

18

2. *Credit for Actual Time Spent in Presentence Custody*

a. *Governing Legal Principles*

The California Supreme Court has recognized that "there is no simple or universal formula to solve all presentence credit issues" but the "aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts." (*In re Joyner* (1989) 48 Cal.3d 487, 495 (*Joyner*), accord *People v. Bruner* (1995) 9 Cal.4th 1178, 1195 (*Bruner*).) "As with many determinations of credit, a seemingly simple question can reveal hidden complexities. Although the statutory language in section 2900.5 'may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts.' [Citation.] 'Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is "difficult to interpret and apply." [Citation.] As [the California Supreme Court has] noted, in what is surely an understatement, "[c]redit determination is not a simple matter." ' [Citation.]" (*In re Marquez* (2003) 30 Cal.4th 14, 19.)

In *Joyner*, *supra*, 48 Cal.3d 487, which involved criminal proceedings in California and Florida, the Supreme Court established a "strict causation" test for the award of presentence custody credits under section 2900.5. It held: "[A] period of time previously credited against a sentence for unrelated offenses cannot be deemed 'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation." (*Id*. at p. 489.)

19

In reaching its holding in *Joyner*, the Supreme Court examined the purposes for presentence credits: "(1) eliminating the unequal treatment suffered by indigent defendants who, because of their inability to post bail, serve a longer overall confinement for a given offense than their wealthier counterparts [citation] and (2) equalizing the actual time served in custody by defendants convicted of the same offense [citation]." (*Id*. at p. 494.) It noted that both "purposes are concerned with equalizing the treatment of different individuals each convicted in a single proceeding of the same offense or offenses." (*Ibid*.)

In *Bruner*, *supra*, 9 Cal.4th 1178, the Supreme Court applied *Joyner*'s "strict causation" test to a different factual scenario. Defendant Bruner was convicted of a new crime and received a prison sentence "concurrent" to a term he was already serving for violation of his parole in another case. (*Id*. at p. 1180.) The defendant's "custody as a parole violator was based in part on the same drug incident that led to the later conviction, but also upon additional, unrelated grounds." (*Ibid*.) The court held: "[W]hen presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of *Joyner* should apply. Here, defendant received credit for all presentence custody in his parole revocation proceeding, and he has failed to demonstrate that but for the cocaine possession leading to his current sentence, he would have been free, or at least bailable, during that presentence period. Hence, he is not entitled to duplicative credit against the current sentence." (*Id*. at pp. 1180-1181.)

*Bruner* concluded that post-*Joyner* decisions had correctly applied "a general rule," not limited to the dual jurisdiction situation in *Joyner*, that "a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period." (*Id*. at p. 1191.) The Supreme Court in *Bruner* acknowledged the difficulty of

satisfying the rule of "strict causation" but explained that "it arises from the limited purposes of the credit statute itself." (*Id.* at p. 1193.)

In *Bruner*, the Supreme Court briefly discussed the second sentence of section 2900.5, subdivision (b), which limits credit where a single period of custody is attributable to multiple offenses subjected to consecutive sentences. It noted: "[T]here is no indication the 1978 amendment [to section 2900.5, which added the second sentence to subdivision (b),] was concerned with concurrent sentences for unrelated conduct imposed in *multiple proceedings*. By its terms, the amendment does no more than clarify that when consecutive terms are imposed for multiple offenses in a single proceeding, only one of the terms shall receive credit for presentence custody, while leaving undisturbed the accepted principle that when *concurrent* sentences are imposed at the same time, presentence custody is credited against all." (*Bruner*, *supra*, 9 Cal.4th at p. 1192, fn. 9.)

As alluded to in *Bruner*, an altogether different situation exists where presentence custody is attributable to multiple instances of unrelated criminal conduct that are charged together and the court simultaneously imposes concurrent sentences. "If the defendant is arrested and charged with multiple offenses, the presentence time is credited against the term imposed on each crime where concurrent sentences are imposed. (*People v. Schuler* (1977) 76 Cal.App.3d 324, 330.) Thus, if the multiple crimes are prosecuted in a single proceeding and concurrent sentences are ordered, it makes no difference that the crimes were committed at different times." (*People v. Adrian* (1987) 191 Cal.App.3d 868, 875-876; see *People v. Ayon* (1987) 196 Cal.App.3d 1114, 1117.)

*People v. Kunath* (2012) 203 Cal.App.4th 906, extended this analysis to simultaneous concurrent sentencing in multiple cases. In *Kunath*, the defendant was "in presentence custody on mere charges of crime until he was sentenced simultaneously" in two separate cases. (*Id.* at p. 911.) Defendant Kunath was first arrested for possession of

21

a controlled substance for sale and released on bond in that case. (*Id*. at p. 909.) A short time later, he was arrested for an unrelated possession of a controlled substance and confined pending trial. (*Ibid*.) After he pleaded guilty in both cases, he was sentenced to concurrent prison terms in a single sentencing hearing. (*Ibid*.) The appellate court determined that, under section 2900.5, "when concurrent sentences are imposed at the same time for unrelated crimes, the defendant is entitled to presentence custody credits on each sentence, provided he is not also in postsentence custody for another crime." (*Id*. at p. 908.) It reasoned: "Where . . . the defendant's custody is solely presentence on all charges and he is simultaneously sentenced on all charges to concurrent terms, the policy behind section 2900.5 applies. Presentence custody credits must apply to all charges to equalize the total time in custody between those who obtain presentence release and those who do not." (*Id*. at p. 911.)

b. *Case No. CR-12-00027*

Defendant was initially arrested on January 7, 2012 for conduct leading to the charges in Case No. CR-12-00027 and retained in local custody from that date forward through sentencing. As indicated, the probation report recommended that defendant be credited only for presentence custody from January 10, 2012 (date of arraignment on the original complaint in Case No. CR-12-00027) to January 18, 2012 (release on O.R. in Case No. CR-12-00027). The court impliedly followed this recommendation.

On appeal, the parties agree that custody from January 7, 2012, the date of arrest, to June 7, 2012, the date of sentencing, was "attributable to proceedings related to the same conduct for which the defendant has been convicted" in Case No. CR-12-00027. (§ 2900.5, subd. (b).) Even though defendant was theoretically entitled to release on O.R. in CR-12-00027 from January 18, 2012 onward, it appears from the record that defendant remained in custody through sentencing because he did not obtain release in Case No. CR-11-01168. The continuing custody in that case was based upon defendant's failure to

22

obey all laws, which defendant maintains was "wholly attributable to the charges in the attempted carjacking case . . . ." (Case No. CR-12-00027). The Attorney General concedes this claim, stating the defendant "would not have been in custody from January to June 2012 but for the crimes he committed in case number 27."

Defendant compares this case to *People v. Williams* (1992) 10 Cal.App.4th 827. In *Bruner*, the Supreme Court cited *Williams* with approval and observed that the appellate court had determined that the defendant was "entitled to credit against his sentence for time spent in custody on the probation revocation because this custody arose from the identical conduct that led to the criminal sentence." (*Bruner*, *supra*, 9 Cal.4th at p. 1193, fn. 10.) *Bruner* pointed out that one of the reasons for the appellate court's decision was that "the record of the probation revocation disclosed no basis for a conclusion that the 'obey all laws' violation related to anything except the kidnapping-assault case." (*Ibid.*) It noted that a second reason was that "the mere dismissal of certain counts in the criminal proceeding, all of which counts stemmed from the same criminal episode, did not mean that the revocation was based on conduct different from that leading to the criminal sentence. [Citation.]" (*Ibid.*)

While the facts of *Williams* are not exactly analogous to the circumstances of this case, we find the following principle to be sound: the dismissal of some counts of a multiple-count information does not cause presentence custody resulting from a criminal episode, which leads to probation revocation in an earlier case, to necessarily become nonattributable where the criminal proceeding continues to relate to that same conduct and defendant is convicted. (See *People v. Williams*, *supra*, 10 Cal.App.4th at pp. 829, 832-835.) Also, similar to the situation in *Williams*, it appears that the only basis for the court's summary revocation of DEJ for defendant's violation of the DEJP's "obey all laws" condition in Case No. CR-11-01168 was defendant's criminal conduct that resulted in the convictions in Case No. CR-12-00027. Thus, all of defendant's presentence

23

custody following his arrest on January 7, 2012 was attributable to his criminal conduct on January 6, 2012. Since the trial court simultaneously sentenced defendant to concurrent terms, this case does not present any issue of duplicative credit applied to terms of incarceration imposed at different times resulting in a windfall to a defendant. (See *Bruner*, *supra*, 9 Cal.4th at pp. 1191-1193; see also *In re Marquez, supra*, 30 Cal.4th at p. 23 ["The requirement of 'strict causation,' on which this court relied in *Bruner* . . . and *Joyner* . . . , is applicable in cases involving the possibility of duplicate credit that might create a windfall for the defendant"]; cf. *People v. Kunath*, *supra*, 203 Cal.App.4th at pp. 908-911.) Accordingly, we agree that defendant is entitled under section 2900.5, subdivision (b), to credit for time spent in jail from the date of his arrest on January 7, 2012 until he was sentenced on June 7, 2012, a total of 153 actual days.[11]

c. *Case No. CR-11-01168*

In Case No. CR-11-01168, the probation report recommended that defendant be given presentence credit for a total of 147 actual days. Those days of actual custody included three days in early January, specifically January 7, 2012 (the date of his arrest for conduct leading to the charges in Case No. CR-12-00027) through and including January 9, 2012 (the day before defendant's arraignment in Case No. CR-12-00027). No credit was given for January 18, 2012, the date the court summarily revoked DEJ in Case No. CR-11-01168 and released defendant on O.R. in Case No. CR-12-00027. The court impliedly followed the probation officer's recommendation regarding calculation of the actual days served.

We asked the parties to address in supplemental briefing whether defendant was entitled to any presentence credit in Case No. CR-11-01168 during the month of January

---

[11] In light of our conclusion, we do not address defendant's other arguments that the orders releasing him on O.R. were "a mere sham employed to deprive him of credits he should have received" or the trial court failed to comply with the law applicable to his release on O.R. (See §§ 1270.1, subd. (b), 1318 et seq.)

2012 before summary revocation of DEJ on January 18, 2012 or for custody on January 18, 2012. It appears from the record that, following his arrest on January 7, 2012, defendant was not initially in custody attributable to proceedings related to the same conduct for which the defendant was convicted in Case No. CR-11-01168, namely possession of a controlled substance. Once the court summarily revoked DEJ pending hearing on the alleged violation of the DEJP's terms and conditions, defendant's custody in Case No CR-11-01168 was then also attributable to the proceedings related to the same conduct for which the defendant was convicted in that case.

In *People v. Pruitt* (2008) 161 Cal.App.4th 637, a defendant appealed from a judgment following revocation of probation. He challenged the trial court's refusal to award credit for a period of presentence custody from the date of his arrest on new charges to the day before summary revocation of probation. (*Id*. at pp. 639-641.) After the probation violation hearing, the defendant became subject to the previously suspended sentence. (*Id*. at p. 640.) In the new case, the charges were dismissed in furtherance of justice (§ 1385) at the request of the People. (*Id*. at pp. 640-641.) The issue on appeal was whether the defendant was entitled to presentence custody credit "for the time spent in jail on the new criminal charges following . . . arrest but prior to the summary revocation of . . . probation." (*Id*. at p. 639.)

The appellate court concluded that defendant Pruitt was not entitled to custody credit in the probation case for "an initial period solely attributable to the new charges" in the separate case. (*Id*. at p. 649.) It explained: "That custody, even though based on the conduct that ultimately led to revocation of his probation, was clearly and simply not for the same conduct for which he had been convicted and sentenced. In the words of section 2900.5, subdivision (b), that initial custody was not 'attributable to proceedings related to the same conduct for which the defendant has been convicted.' " (*Ibid*.)

We similarly conclude that defendant was not entitled to credit in Case No. CR-11-01168 for the initial period of custody following his January 7, 2012 arrest and prior to summary revocation of DEJ because, during that period, defendant's custody was attributable solely to new, unrelated criminal conduct. Courts are statutorily precluded from giving credit unless "the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (§ 2900.5, subd. (b).)

Defendant's presentence custody became attributable to the proceedings in Case No. CR-11-01168 beginning on January 18, 2012, when DEJ was summarily revoked and defendant remained in custody. (See *People v. King*, *supra*, 3 Cal.App.4th at p. 886 [partial day is credited as a day]; cf. *People v. Kunath*, *supra*, 203 Cal.App.4th 906.) This result obtains because "[t]he purpose of section 2900.5 is to equalize the total time in custody between those who suffered presentence custody on unproven charges and those who did not. (See *Bruner*, *supra*, 9 Cal.4th at pp. 1183–1184.)" (*People v. Kunath*, *supra*, 203 Cal.App.4th at p. 910.) Accordingly, defendant is entitled to credit for 145 actual days spent in custody, consisting of the three days in custody prior to January 2012 and 142 days spent in custody upon summary revocation of DEJ on January 18, 2012 through sentencing on June 7, 2012. The parties now agree with this calculation.

3. *Computation of Conduct Credit*

a. *Case No. CR-12-00027*

The People do not dispute that, since defendant was entitled to 153 actual days of presentence custody credit in Case No. CR-12-00027, he is entitled to 152 days of conduct credit under section 4019.[12] This calculation appears to be correct. (See § 4019, subds. (b), (c), (f), & (h); cf. *In re Marquez*, *supra*, 30 Cal.4th at p. 26.)

---

[12] Defendant maintains that attempted carjacking is not a violent felony and, therefore, he is not subject to the 15 percent presentence credit limitation of section 2933.1, subdivision (c). The Attorney General does not dispute this claim. While carjacking is expressly listed in subdivision (c) of section 667.5 (§ 667.5, subd. (c)(17)),

*b. Case No. CR-11-01168*

Defendant asserts that the trial court erred in applying a 20 percent credit limitation to the calculation of conduct credits in Case No. CR-11-01168. We find merit in this contention.

During voir dire at the change of plea hearing on May 3, 2012, defendant expressed his understanding that the felony to which he was pleading (attempted carjacking) in Case No. CR-12-00027 was a violent felony and a strike under Three Strikes law. He indicated that he understood that the credits he would earn in state prison would be subject to a 15 percent limitation.

In the probation report for Case No. CR-12-00027 (attempted carjacking, etc.), the 15 percent limitation of section 2933.1, subdivision (c), applicable to presentence credit was *not* applied in calculating the recommended conduct credit. But in the probation report for Case No. CR-11-01168 (possession of a controlled substance), this 15 percent limitation was applied and the conduct credit was calculated to be 22 days.

At the sentencing hearing, the probation officer explained that she had limited conduct credit to 15 percent of the actual days in custody because defendant had admitted that the felony to which he had pleaded was a violent felony and a strike. Defense counsel argued that offense was a serious, but not a violent, felony.[13] The prosecutor agreed that the crime appeared to be a serious felony pursuant to section 1192.7 and not a

---

an "attempted carjacking" is not. While "any felony in which the defendant uses a firearm which use has been charged and proved as provided in . . . Section 12022.5" is a violent felony within the meaning of section 667.5, subdivision (c) (§ 667.5, subd. (c)(8)), the enhancement allegations under section 12022.5, subdivision (a), were not admitted by defendant or proved.

[13] Attempted carjacking was at all relevant times and still is a serious felony within the meaning of section 1192.7, subdivision (c). (§ 1192.7, subds. (c)(27) & (c)(39); former § 1192.7, subds. (c)(27) & (c)(39) [Stats.2006, ch. 337, § 37, pp. 2643-2644, eff. Sept. 20, 2006].)

violent felony under section 667.5 and, therefore, the credits "would be adjusted accordingly."

The court awarded credit for 147 actual days plus 29 days of conduct credit, which reflected a "20 percent limitation," for a total of 176 days of credit in Case No. CR-11-01168. Defense counsel asserted that defendant was entitled to "50 percent" conduct credit and submitted the matter. The abstract of judgment reflects the court's credit calculation.

In Case Number CR-11-01168, defendant now reiterates that he was not convicted of a violent felony (see § 667.5, subd. (c)) and, therefore, the 15 percent limitation of section 2933.1, subdivision (c), did not apply and he was entitled to full presentence conduct credit. Under section 2933.1, subdivision (c), presentence conduct credit is limited to 15 percent of the actual period of presentence confinement "[n]otwithstanding Section 4019 or any other provision of law . . . ." It applies to "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5." (§ 2933.1, subd. (a).) The record does not establish that defendant was convicted of any qualifying violent felony within the meaning of section 2933.1, subdivision (c). (See § 667.5, subd. (c); fn. 12, *ante*.)

Defendant also points out the Three Strikes 20 percent credit limitation based on a prior strike conviction (a prior serious or violent felony) did not apply to him and, in any event, it applies only to post-sentence credit. (See §§ 667, subd. (c)(5); 1170.12, subd. (a)(5); see also §§ 667.5, subd. (c) ["violent felony" defined], § 1192.7, subd. (c) ["serious felony" defined]; *In re Martinez* (2003) 30 Cal.4th 29, 34; cf. § 2933.1, subd. (c).) The People properly concede that defendant was not subject to a 20 percent credit limitation.

Defendant initially asserted on appeal that he is entitled to 147 days of actual credit and 146 days of conduct credit in Case Number CR-11-01168. The People initially

agreed with defendant's computation. Following our request for further briefing, both parties agree, as do we, that defendant is entitled to 145 actual days of credit for time served in Case No. CR-11-01168 and 145 days of conduct credit under former section 2933 (Stats. 2010, ch. 426, § 1, p. 2087), which was in effect on May 18, 2011 when he committed the crime and which governs under section 4019.[14] (Cf. *People v. Hul* (2013) 213 Cal.App.4th 182, 187 ["under prior law governing Hul's May 2011 offense date, the 16–month sentence the trial court imposed would have been served in state prison (former Health & Saf. Code, § 11350, subd. (a), Stats. 2000, ch. 8 (S.B.550), § 3) not a county jail, and the applicable rate of presentence conduct credit therefore would have been full, day-for-day credit (compare former § 2933, with former § 4019)"].)

## DISPOSITION

The judgment is modified to award defendant a total of 305 days of presentence custody credits, consisting of 153 actual days and 152 days of conduct credit, in Case No. CR-12-00027. The judgment is modified to award defendant a total of 290 days of presentence custody credits, consisting of 145 actual days and 145 days of conduct credit, in Case No. CR-11-01168. As modified, the judgment is affirmed. The trial court

---

[14]    In May 2011, a violation of former Health and Safety Code section 11350, subdivision (a), was "punished by imprisonment in the state prison." (See Stats. 2000, ch. 8, § 3, p. 50, eff. March 29, 2000; cf. Health & Saf. Code, § 11350, subd. (a) [Stats. 2011, ch. 15, § 151, p. 319, eff. April 4, 2011, operative Oct. 1, 2011] [a violation is now "punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code" (realignment)]; see Stats. 2011, ch. 15, § 636, p. 622; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011; Stats. 2011, ch. 40, § 3, p. 1748, eff. June 30, 2011.)

is directed to prepare an amended abstract of judgment reflecting the modifications and to forward a certified copy to the Department of Corrections and Rehabilitation.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.